FILED

NOV 0 1 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CYNTHIA S. CONLEY,**

               Plaintiff,

     v.

**MICHAEL J. ASTRUE,**

           Defendant.

Civil No. 09-745-PK

**FINDINGS AND**
**RECOMMENDATION**

PAPAK, Magistrate Judge:

    Plaintiff Cynthia S. Conley ("Conley") seeks judicial review of the Social Security

Commissioner's final decision denying her application for Disability Insurance Benefits. This

court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons that follow, the

Commissioner's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

## **BACKGROUND**

Born in 1961 (Tr. 118), Conley completed a GED in 1992.  Tr. 138.[1]  Conley applied for

benefits in July 2002 ("2002 Application"), alleging disability since September 2000, due to

cervical and lumbar spine injuries.[2]  The Commissioner denied these applications initially and

upon reconsideration, and a hearing was held before an Administrative Law Judge ("ALJ") on

February 17, 2005.  Tr. 59-83.  The ALJ found Conley not disabled on June 6, 2005.  Tr. 59-83.

Conley appealed to this court, which, on September 19, 2007, affirmed the ALJ's decision.

*Conley v. Astrue*, No. 06-1332 (D. Or. Sep. 19, 2007)(King, J.).  The Ninth Circuit subsequently

affirmed this court's decision on March 31, 2009.  *Conley v. Comm'r Soc. Sec.*, 321 Fed. Appx.

575 (9th Cir. 2009) (not for publication).

While her appeal regarding her 2002 Application was pending, Conley filed a second

application for benefits on June 16, 2005 ("2005 Application") (Tr. 118-121), claiming disability

beginning February 12, 2002 (Tr. 118), due to fibromyalgia, right side numbness, "severe"

numbness in her back, neck and lumbar pain, high cholesterol, and acid reflux disease.  Tr. 132.

The Commissioner denied Conley's 2005 Application initially and upon reconsideration.

Tr. 97-106.  The ALJ held hearings regarding the 2005 Application on November 20, 2007 (Tr.

548-580), and May 7, 2008.  Tr. 581-628.  The ALJ again found Conley not disabled on August

15, 2008.  Tr. 16-31.  The Appeals Council accepted additional evidence into the record but

denied review of the matter on May 22, 2009 (Tr. 5-10), and Conley again appeals.

--------

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer December 2, 2009 (Docket #11).

[2]Conley's initial application is described in this court's September 19, 2007, Opinion.
*Conley v. Astrue*, No. 06-1332, slip op. at 2 (D. Or. Sep. 19, 2007).

2 - FINDINGS AND RECOMMENDATION

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Conley asserts that the ALJ incorrectly assessed testimonial and medical evidence relating to her residual functional capacity ("RFC") assessment between steps three and four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement.  20 C.F.R. § 404.1509, 404.1520(a)(4)(ii).  If the claimant does not have such a severe impairment, she is not disabled.  *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii).  If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled.  20 C.F.R. § 404.1520(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC.  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 C.F.R. §§ 404.1520(e); Social Security Ruling ("SSR") 96-8p.  The ALJ uses this information to determine if the claimant can perform her past relevant work at step four.  20 C.F.R. § 404.1520(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is

3 - FINDINGS AND RECOMMENDATION

capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v),

404.1520(f); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at

1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner

to show that "the claimant can perform some other work that exists in the national economy,

taking into consideration the claimant's residual functional capacity, age, education, and work

experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20

C.F.R. §§ 404.1566; 404.1520(g).

### THE ALJ'S FINDINGS

The ALJ's August 15, 2008 decision presently under review found Conley's fibromyalgia

and depression severe and found her chronic obstructive pulmonary disease ("COPD") and

migraine headaches non-severe at step two in the sequential proceedings. Tr. 18. The ALJ found

that these impairments did not meet or equal a listed disorder at step three. Tr. 23. The ALJ

found that Conley retained the residual functional capacity to "perform modified light exertion

with postural, environmental and vocational nonexertional limitations." Tr. 24. The ALJ

additionally found that Conley could not climb ropes, ladders, or scaffolding, could occasionally

balance, stoop, kneel, crouch, and crawl, and that she must avoid concentrated exposure to

vibration, extreme heat and cold, and hazards such as working at unprotected heights or near

machinery with expose moving parts. Tr. 28. The ALJ also limited Conley to routine, repetitive

work. Tr. 29.

The ALJ found that this RFC precluded performance of Conley's past relevant work at

step four, but that Conley could perform work in the national economy as a cashier, new accounts

4 - FINDINGS AND RECOMMENDATION

clerk, and hand packager. Tr. 30. The ALJ therefore found Conley not disabled under the Commissioner's regulations. Tr. 30-31.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Conley challenges the ALJ's August 15, 2008 decision pertaining to her step two findings, her RFC assessment with associated findings regarding the medical evidence and lay testimony, and the ALJ's step five findings. Conley asserts that the matter should be remanded for the immediate award and payment of benefits.

I.      **Res Judicata Applies to the ALJ's June 6, 2005 Decision**

Conley's briefing repeatedly asks this court to readdress the 2004 opinion of examining physician Dr. Gandler.  Pl.'s Opening Br. 25-27, 29, 31.  Conley also asks this court to readdress her arguments citing SSR 96-8p regarding Dr. Gandler.  *Id.* at 30.

Dr. Gandler examined Conley on February 12, 2004 (Tr. 512-14), and submitted an additional letter and check-box form for the record on May 13, 2004.  Tr. 503-11.  The ALJ discussed Dr. Gandler's opinion at length in her June 6, 2005, decision.  Tr. 64-65, 72-74, 77-79. This court affirmed the ALJ's June 6, 2005 analysis of Dr. Gandler's opinion on September 17, 2005.  *Conley*, No. 06-1332, slip op. at 6-8.  On March 31, 2009, the Ninth Circuit explicitly affirmed the reasoning of the ALJ and this court regarding Dr. Gandler's opinion.  *Conley*, 321 Fed. Appx. at 577.

Res judicata principles apply in the context of social security applications and appeals. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  Absent "changed circumstances," Conley cannot now raise an issue that has previously been litigated.  *Id.*  A claimant's attainment of "advanced age" under the Commissioner's regulations constitutes a "changed circumstance."  *Id.* A new impairment also constitutes a "changed circumstance," *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995), but continuing treatment for an existing impairment does not.  *Kirk v. Sullivan*, 888 F.2d 1394 (9th Cir. 1989)(not for publication).

Conley fails to identify any "changed circumstances" which would preclude application of res judicata in her initial briefing.  Pl.'s Opening Br.  Conley was forty years old at the time of her 2002 application, and forty three years old at the time of her 2005 Application.  An individual under age forty nine is a "younger individual" under the Commissioner's regulations.  20 C.F.R.

§ 404.200(h)(1).  Because Conley did not change age categories between the respective filing dates of her applications, there is not  a "changed circumstance."

In her Reply Brief, Conley asserts that her testimony that her condition "worsened" and new medical evidence together constitute a "changed circumstance."  Pl.'s Reply Br. at 5. Conley does not specify the manner in which her alleged impairments worsened.  Because mere continuing treatment does not constitute a changed circumstance, *Kirk*, 888 F.2d at 1394, this reasoning fails.

Conley also asserts that the ALJ's August 15, 2008 decision should have cited the collateral estoppel doctrine regarding Dr. Gandler's opinion, and that the doctrine does not apply if the ALJ did not cite it.  Pl.'s Reply Br. at 4 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 S. Ct. 1947).  Res judicata applies to an ALJ's findings in the context of social security cases even where the ALJ did not cite it.  *Chavez*, 844 F.2d at 692-93.  This submission therefore fails.

For all of these reasons, the court will not address arguments pertaining to Dr. Gandler's opinion, or any other issues previously decided by the ALJ on June 6, 2005.  The following discussion addresses arguments relating to Conley's new impairments and new medical evidence only.

## II.    The ALJ's Step Two Findings

Conley asserts that the ALJ mischaracterized the evidence pertaining to her pain disorder, migraines, incontinence, and COPD, and should have found these impairments "severe" at step two in the sequential proceedings.  Pl.'s Opening Br. 21-25.  Conley did not raise these arguments in her pleadings before this court pertaining to the 2002 Application, and this court did not address these impairments in its September 19, 2007 Opinion.  *Conley*, No. 06-1332, slip

7 - FINDINGS AND RECOMMENDATION

op. at 5-20.

### A.    Standards: Severity Findings At Step Two

At step two, the ALJ determines if the claimant has a "severe" impairment.  20 C.F.R. §
404.1520(a)(4)(ii).  An impairment is "severe" if it "significantly limits your ability to do basic
work activities."  20 C.F.R. § 404.1520(c), *see also* 20 C.F.R. § 404.1521.  Such an impairment
must last, or be expected to last, twelve months.  20 C.F.R. § 404.1509.  However, the ALJ's
analysis at steps four and five must consider all of a claimant's impairments, both severe and
non-severe.  20 C.F.R. § 404.1545(a)(2). When the ALJ proceeds beyond step two, and considers
all of a claimant's impairments in formulating his RFC analysis, any omission at step two is
harmless.  *Lewis v. Astrue*, 498 F.3d 909, 511 (9th Cir. 2007).  To establish reversible error at
step two in the sequential proceedings, a claimant must show that the ALJ's RFC analysis did not
consider the contested step two impairment.  *Id.*  Mere demonstration of error in the ALJ's step
two analysis does not establish reversible error.  *Id.*

### B.    Analysis: The ALJ's Step Two Findings

#### a.    Pain Disorder

Conley asserts that the ALJ should have found her pain disorder severe at step two.  Pl.'s
Opening Br. 24.  Conley argues that examining psychologist Dr. Gostnell's opinion supports this
diagnosis.  *Id.*  Conley provides no citation to the record in support of this argument.

Examining psychologist Dr. Gostnell evaluated Conley on August 29, 2005.  Tr. 400-05.
Dr. Gostnell assessed "Pain Disorder Associated with Psychological Factors and a General
Medical Condition, chronic."  Tr. 405.  Dr. Gostnell based this diagnosis upon a clinical
interview.  Tr. 400-05.  Dr. Gostnell's mental status testing noted Conley's pain behavior, and

found that Conley could sit for the duration of her one-hour evaluation despite reporting a thirty-minute sitting limitation. Tr. 403-04.

The ALJ discussed Dr. Gostnell's opinion. Tr. 22. The ALJ rejected Dr. Gostnell's pain disorder diagnosis because it was "based entirely on plaintiff's anecdotal pain claims." Tr. 23. The ALJ may reject medical source opinions predicated upon reporting of a claimant found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Similarly, the ALJ may reject medical testing based upon a claimant's effort in that testing where the claimant is not credible. *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002). Conley does not challenge the ALJ's credibility decision. Because the ALJ found Conley not credible, the ALJ properly rejected Dr. Gostnell's opinion regarding her alleged pain disorder so far as it was based upon her reporting and conduct.

### b.    Migraines

Conley also asserts that the ALJ should have found her migraines severe at step two. Pl.'s Opening Br. 24. Conley does not cite a migraine diagnosis in the record before this court.

The ALJ discussed Conley's migraine headaches. Tr. 18, 20. The ALJ noted that Conley first complained of migraine headaches on December 19, 2006, to Nurse Practitioner Rodda. Tr. 20 (citing Ex. 11F at 212, 216). The ALJ's step two findings do not cite further references to Conley's alleged migraine headaches.

The record before this court pertaining to the period after the ALJ's June 6, 2005, decision shows no reference to headaches between June 6, 2005, and December 19, 2006. On December 19, 2006, Nurse Rodda noted that Conley reported migraine symptoms and diagnosed "migraine headache." Tr. 489. Nurse Rodda's remaining notes do not refer to migraine

headaches, though Nurse Rodda noted that Conley reported migraine headaches in a January 3, 2007, letter to Conley's counsel in this matter. Tr. 463. This record does not show that any alleged migraine headache met the twelve-month durational requirement, or establish any work-related limitations.

Conley now argues that Dr. Gandler's May 13, 2004, opinion establishes a migraine headache diagnosis pertaining to the period presently under review. Pl.'s Opening Br. 24. This court will not review Dr. Gandler's opinion, for the reasons explained above. *Supra*, 6-7. Furthermore, Dr. Gandler's indicated chart note does not refer to migraine headaches. Tr. 503.

In summary, Conley does not presently establish any work-related limitations, or any limitation lasting twelve months, stemming from her alleged migraine impairment. The ALJ's finding regarding her migraine headaches are based upon the record and the correct legal standard.

**c.    Incontinence**

Conley also argues that the ALJ failed to find her alleged bladder incontinence severe at step two in the sequential proceedings. Pl.'s Opening Br. 22. Conley first claims that the ALJ misrepresented the record, pointing to her October 29, 2003 hysterectomy with a pubovaginal sling operation for stress urinary incontinence. *Id.* (citing Tr. 329-39). Conley also asserts that nurse practitioner Lawson's November 19, 2007, chart note citing "possible urethral bladder problem/dysfunction" establishes that the ALJ made a reversible error at step two regarding her alleged incontinence. *Id.* (citing Tr. 481).

As discussed, this court will not consider evidence pertaining to the period before the

ALJ's June 6, 2005 decision. Conley's citation to her 2003 hysterectomy is therefore irrelevant. Even were this not the case, Conley's citation establishes no work-related impairment relating to alleged incontinence during the period presently under review.

The record also shows that on November 19, 2007, nurse Lawson performed a history and physical examination. Tr. 481. Nurse Lawson noted Conley's report of numbness upon urination and that it "hurts to pee." Tr. 481. Nurse Lawson noted that Conley's urethra was within normal limits ("WNL"), and assessed "possible urethral/bladder problem/dysfunction." *Id.* The ALJ did not cite this chart note. The ALJ need not cite evidence that is "neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Because Conley's indicated citation does not establish that she was incontinent, and further points to no work-related limitations relating to any alleged incontinence, the ALJ committed no reversible error in omitting this evidence from her step two findings.

### d.    Chronic Obstructive Pulmonary Disease

Finally, Conley asserts that the ALJ erred in finding her COPD non-severe at step two. Pl.'s Opening Br. 22-24. Conley argues that the ALJ's finding that Conley's alleged COPD is "anecdotal" contradicts the ALJ citation to Dr. Juarez's chart note stating that he prescribed Spiriva.[3] *Id.* at 23. Conley also asserts that Nurse Practitioner Rodda cited Dr. Juarez's treatment, provided nebulizer treatment, and diagnosed COPD. *Id.*

---

[3]Spiriva is an anticholinergic agent which enlarges the airways to allow easier breathing. It is prescribed for bronchitis, emphysema, and COPD. "Spiriva," *available at* http://www.drugs.com/spiriva.html (last visited October 1, 2010).

The ALJ discussed Conley's alleged COPD. The ALJ found that the medical record did not support Conley's allegation of COPD because no medical practitioner diagnosed COPD and the record contains no diagnostic testing pertaining to COPD. Tr. 21, 25. The ALJ noted that Conley reported that her medical history included a COPD diagnosis to Nurse Rodda on January 2, 2007, but found this report unsupported by the record. Tr. 20.

Conley cites treatment notes produced by her treating nurse practitioner, Nurse Rodda, emergency room visits, and later report of a visit to a pulmonary specialists. Pl.'s Opening Br. 23 n3. Conley's indicated emergency room visit on October 28, 2005, shows a bronchitis diagnosis and does not mention COPD. Tr. 436. Conley also relies upon Nurse Rodda's January 3, 2007, checklist letter submitted to Conley's counsel, which noted a COPD diagnosis (Tr. 463), and listed COPD as a diagnosis contributing to Conley's workplace limitations. Tr. 466-68. Nurse Rodda made no COPD diagnosis before or contemporaneously with her January 3, 2007 opinon.

The record before this court shows that Conley presented to Nurse Rodda with difficulty breathing on September 13, 2007. Tr. 484. Nurse Rodda's chart note states "O2 sat of 87 sitting uncomfortably on exam table. Lungs with wheezes and rales over bronchial tree, prolonged expiration vs inhalation time noted." *Id.* This language is consistent with a breathing disorder, but does not contain test results establishing a COPD diagnosis. Nurse Rodda listed diagnoses of "Asthma RAD, with acute [exacerbation], COPD, cough, does not appear to have infection today" (internal citations to diagnostic codes omitted). *Id.*

On December 19, 2007, Nurse Rodda diagnosed bronchitis and did not diagnose COPD.

12 - FINDINGS AND RECOMMENDATION

Tr. 476.

Finally, Conley cites her reported health history submitted to an unidentified practitioner at "Oregon City Medical" on an unspecified date (Tr. 495), and her own report to counsel that she saw a pulmonologist, Dr. Juarez, for "pulmonary disease." Tr. 546.

These instances in the medical record do not establish a properly-supported COPD diagnosis lasting twelve months or longer during the period in question. The record does not contain a pulmonary study conclusively establishing COPD, and Conley's report of a COPD diagnosis are indeed anecdotal, as the ALJ noted. Regardless, to establish reversible error at step two, Conley must show that the ALJ's subsequent analysis omitted any work-related limitations stemming from the impairment alleged at step two. *Lewis*, 498 F.3d at 511. The ALJ's RFC includes environmental limitations (Tr. 24), including no exposure to extreme heat and cold. Tr. 28. Conley points to no evidence suggesting that her alleged COPD, or any other breathing impairment, would further contribute to her RFC. Though Nurse Rodda indicated that COPD contributed to her opinion that Conley was unable to work on January 9, 2007, Tr. 466, Nurse Rodda did not explain the manner in which a respiratory disorder would limit Conley's workplace abilities. For these reasons, the ALJ correctly found that this assessment was unsupported by Nurse Rodda's treatment notes. Tr. 28.

In summary, Conley does not point to evidence establishing a COPD diagnosis, with workplace limitations omitted from the ALJ's RFC assessment, lasting twelve months or longer during the period presently under review.

### C.    Conclusion: Step Two Findings

To establish reversible error at step two, Conley must show that the ALJ omitted from consideration established work-related limitations pertaining to the challenged impairment. *Lewis*, 498 F.3d at 511.  Conley fails to make such a showing and the ALJ's step two findings should therefore be affirmed.

## III.    Medical Source Statements

Conley challenges the ALJ's review of examining rheumatologist Dr. Gandler and treating Nurse Practitioner Rodda.   This court again notes that it will not readdress Dr. Gandler's opinion for the reasons articulated above.  *Supra*, 6-7.

### A.    Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(1). However, when making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician.  *Id.* at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  In addition, the ALJ must ordinarily give greater weight to opinions rendered by specialists.  20 C.F.R. § 404.1527(d)(5).

### B.    Analysis

#### a.    Nurse Practitioner Rodda's Opinion

Nurse Practitioner Rodda treated Conley between November 29, 2006, and November 16, 2008. Tr. 475, 493, 526. During this time Nurse Rodda assessed fibromyalgia, unspecified neuritis and radiculitis, depression, and bronchitis. Tr. 462, 475, 476-77, 486, 488-890, 493, 529. Nurse Rodda cited a COPD diagnosis on January 2, 2007, and February 6, 2007, but provided no clinical findings to support this diagnosis. Tr. 488, 490. As noted above, Nurse Rodda also wrote a letter, accompanied by a checklist form, to Conley's counsel on January 3, 2007. Tr. 463-68. Here she stated that she had treated Conley since 2006, that Conley's diagnoses included fibromyalgia, insomnia, migraine headaches, depression, and COPD, as well as a lipid disorder. Tr. 463. Nurse Rodda stated that Conley's symptoms include depression, pain, and shortness of breath, Tr. 463-64, and that Conley would miss work approximately two times per month. Tr. 468.

### b.    The ALJ's Findings

The ALJ discussed Nurse Rodda's opinion in construing both her step two findings and her assessment of Conley's RFC. Tr. 20-21, 25, 27-28. The ALJ found Nurse Rodda's January 2, 2007, COPD diagnosis based on "anecdotal" evidence, and noted that Nurse Rodda's concurrent examination showed that Conley's lungs were clear, and that the record contained no pulmonary function tests. Tr. 20. The ALJ also noted that Nurse Rodda prescribed an opiate medication for Conley's fibromyalgia and another medication for her insomnia. Tr. 20. The ALJ noted that Conley complained of hip pain to Nurse Rodda, that examination was normal, and that Conley then did not seek medical care for a six month period. Tr. 21. Finally, the ALJ noted that Nurse Rodda requested that Conley undergo "work ability testing" before rendering a disability

opinion. Tr. 21. The ALJ also separately noted that, contrary to Conley's testimony, Nurse

Rodda never prescribed her a cane. Tr. 25.

### c.    Analysis

Conley now contends that the ALJ improperly rejected Nurse Rodda's opinion. Conley

first argues that the ALJ's citation to Conley's limited treatment history with Nurse Rodda is

inappropriate because the ALJ also accepted the opinion of examining physician Dr. Tuwiner,

who saw Conley on one occasion. Pl.'s Opening Br. 28. Conley provides no legal authority for

this submission. Because the ALJ provided numerous other reasons for rejecting Nurse Rodda's

opinion, Conley fails to establish error based upon this argument.

Conley also argues that "the absence of consistent symptoms in each of Nurse Rodda's

treatment notes does not indicate that the symptoms have disappeared." Pl.'s Opening Br. 28.

This court's review of the ALJ's decision is restricted to the record before the court. Here, the

ALJ found that Nurse Rodda's treatment notes did not show a clear clinical basis for her COPD

diagnosis. Tr. 20. The record supports this finding, as discussed in detail above. Tr. 488, 490,

*supra*, 12-13. The ALJ's finding is properly based upon the record and should therefore be

affirmed.

Finally, Conley asserts that the ALJ erroneously found that Nurse Rodda restricted her

January 9, 2007 workplace limitations to "at this time." Pl.'s Opening Br. 28. In response to

Conley's counsel's questionnaire asking why Conley would be incapable of "low stress jobs,"

Nurse Rodda wrote that Conley was "having depression and pain and fatigue at this time." Tr.

465. The ALJ's citation to this statement is based upon the record. Nurse Rodda also stated that

the period during which she would find Conley unable to work was "unknown" since she "only began seeing [patient] on 11/29/06." Tr. 469. As noted, when two reasonable interpretations of the evidence arise, this court must affirm the ALJ's decision. *Batson*, 359 F.3d at 1193. Here, a plain reading of Nurse Rodda's January 9, 2007 statement does not show that Nurse Rodda clearly stated that Conley could not work for a twelve month period.

In summary, Conley fails to establish that the ALJ improperly rejected Nurse Rodda's opinion. The ALJ's reasons for rejecting Nurse Rodda's opinion are based upon the record and the correct legal standards. The ALJ's analysis should be affirmed.

## IV.    Lay Witness Testimony

Conley challenges the ALJ's analysis of testimony submitted by her son, identified only as "Mr. Vossberg." Pl.'s Opening Br. 29. Conley does not point to testimony proffered by a "Mr. Vossberg" anywhere in the record. *Id.* The court addresses the testimony of Michael Raymond Rosberg, who testified at Conley's second hearing pertaining to her 2005 Application, on May 7, 2008. Tr. 603-08.

### A.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

### B.    Analysis

Conley's briefing fails to cite any relevant portions of Rosberg's testimony and furthermore fails to explain the manner in which Rosberg's testimony establishes work-related limitations improperly omitted by the ALJ.

Rosberg testified that he had lived with his mother for about ten years prior to the May 2008 hearing, and that during this time he has observed her limping and experiencing shortness of breath after walking short distances. Tr. 604. Rosberg also stated that Conley must sit down after walking approximately one block and that she "often" falls down, sometimes several times per week. *Id.* Rosberg also testified that he observes Conley in pain and that she cries for (1) three to four hours per day due to this pain (Tr. 605), and (2) thirty to forty minutes two or three times per day. Tr. 606. Rosberg stated that Conley has problems with memory, *id.*, and panic attacks. Tr. 607. Finally, in response to counsel's questioning, Rosberg affirmed that Conley has "problems with bladder control or diarrhea" and must use the restroom once every thirty minutes. *Id.*

The ALJ discussed Rosberg's testimony in detail. Tr. 25-26. The ALJ first found Rosberg's report of Conley's crying spells unsupported by Conley's own testimony or the medical record. Tr. 25. The ALJ may reject lay testimony unsupported by or inconsistent with the medical record. *Lewis*, 236 F.3d at 512. The medical record before this court does not show that cried uncontrollably or that she experienced incontinence. This reasoning should therefore

be affirmed.

The ALJ also found Rosberg's testimony regarding Conley's need to use the restroom and alleged incontinence unsupported by the medical record. Tr. 25. The ALJ specifically found no clinical findings or diagnoses regarding bladder or bowel incontinence, and no records of episodes of incontinence. *Id.*

The ALJ concluded that Rosberg "is not knowledgeable in the medical and/or vocational fields and thus he is unable to render opinions on how the claimant's physical impairments effect her overall ability to perform basic work activities . . . ." This analysis misconstrues the purpose of lay testimony and has been flatly rejected by the Ninth Circuit. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2008) (quoting ALJ rejection of lay testimony because lay witness has no expertise). Lay witness testimony is valuable *because* it is predicated upon lay observations. *Doddrill*, 12 F.3d at 919 (emphasis supplied). It is axiomatic that a lay witness lacks expertise in evaluating a claimant's medical condition. This therefore does not establish the required "reasoning germane to the witness," *Bruce*, 557 F.3d at 1116, for rejecting lay testimony. The ALJ's rejection of Rosberg's testimony because he lacks medical and/or vocational expertise was not appropriate.

Finally, the ALJ concluded that Rosberg's reported observations are not supported by the medical record. Tr. 26. The ALJ may reject lay testimony inconsistent with the medical record. *Lewis*, 81 F.3d at 512. Further, lay testimony alone may not establish an impairment. *Id.* As noted above, the record supports the ALJ's findings that Rosberg's reports of Conley's incontinence and crying spells are uncorroborated. This reasoning should be affirmed.

19 - FINDINGS AND RECOMMENDATION

## V.    The ALJ's Step Five Findings

Conley finally challenges the ALJ's step five findings.  Conley claims the vocational expert's testimony pertaining to Conley's limitation is unsupported by the record.  Conley also claims the vocational expert promulgated erroneous testimony regarding jobs available in the national economy.

### A.    Vocational Expert's Testimony Addressing Conley's Limitations

In making her findings at steps five, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy.  20 C.F.R. § 404.1566(e); *Tackett*, 180 F.3d at 1099.  The ALJ's questions to the vocational expert must include all properly supported limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  Conley fails to show that the ALJ omitted any such limitations from her RFC and subsequent questions to the vocational expert.  The ALJ's therefore properly relied upon the vocational expert's testimony in finding Conley not disabled at step five in the sequential proceedings.

### B.    Vocational Expert's Testimony Addressing Jobs in the National Economy

Conley argues that the vocational expert's testimony "ignored" documentation regarding the availability of jobs in the national and regional economies.  Pl.'s Opening Br. 32-33.

Conley raised this argument at length in her briefing before this court pertaining to her 2002 Application.  Pl.'s Opening Br. at 43-48, *Conley v. Astrue*, No. 06-1332 (D. Or. Sep. 19, 2007).  This court clearly rejected that argument in its 2007 decision addressing Conley's application for benefits.  *Conley*, No. 06-1332, slip op. at 18-19.  Subsequent to this decision, the

Ninth Circuit specifically found that the vocational expert's testimony was based upon "substantial support." *Conley*, 321 F. Appx. at 579. The vocational expert's expertise provides the proper foundation for her testimony, *Bayliss*, 427 F.3d at 1218 n4, and this court declines to declines to address this argument again.

In summary, The ALJ's step five findings should be affirmed.

## CONCLUSION

The Commissioner's decision that Conley did not suffer from disability, and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

///

IT IS SO ORDERED.

Dated this 1st day of November, 2010.

Paul Papak
United States Magistrate Judge

21 - FINDINGS AND RECOMMENDATION